## Frank, Administrator, v. Bayuk

*Robert M. Bernstein,* for plaintiff.
*Samuel S. Herman,* for defendant.

GORDON, JR., P. J., March 31, 1936.—The plaintiff's motion for a new trial in this case was granted because we were of opinion that substantial error had been committed by the trial judge in at least one particular, and that the method pursued by counsel for the defendant in defending the case was, if not a positive invasion of the plaintiff's rights, at least prejudicial to him, and tended, by obscuring the real issue, to produce a verdict which we were not satisfied represented complete justice in the case.

The trial judge permitted the defense to call an investigator of the defendant's insurance company, who had passed the scene of the accident after it had occurred, and to have him testify as an expert witness that, from the physical facts he then observed, the automobile of the defendant had been going, in the witness' opinion, 70 miles an hour when the accident happened. We think this was clearly error, first, because the subject matter of the witness' testimony did not fall within the proper domain of expert evidence, and the witness himself was not in fact an expert qualified by special study, training or experience to give expert testimony; and, second, because the opinion which the witness was permitted to express went to the ultimate controlling fact in the case, the determination of which was exclusively for the jury, and upon which the jury was fully competent to draw its own conclusions from the facts testified to.

The layman, observing the actual movement of a car, may be competent, if he has had ordinary experience in judging speeds, to testify to its rate of motion as he has seen it. But the deductions to be made from the physical evidence that it leaves of its passage over the ground are solely within the domain of ordinary reasoning, and the giving by a witness of his own conclusions therefrom is a manifest intrusion upon the function of the jury. The judgment of this employe of the defendant's insurance

company upon such a question, though he may have investigated many accidents for his employer, had no special probative value whatever. We think, therefore, that by admitting the witness as an expert, the learned trial judge gave to him and to his testimony a standing and a credit to which they were not lawfully entitled. The witness' evidence was thus buttressed by the preliminary acceptance of him by the court as an expert; and, although the jury was told that it was at liberty to disregard his opinion, his testimony went to the jury unwarrantably supported and strengthened by the apparent judicial recognition and approval of it as worthy of consideration above and beyond that of an ordinary witness.

We have considered, and are unable to agree with, the argument of the defendant that, even if the admission of the testimony was technical error, it had no real effect upon the result of the trial. The suit was for damages for the death of plaintiff's decedent, who was killed while driving the defendant's automobile in the State of Ohio. The defendant was seated in the automobile beside the decedent, and while he was attempting to pass another automobile a child appeared in the roadway some distance ahead. In endeavoring to avoid striking the child, the automobile was driven off the road and hit an obstruction, resulting in the decedent's death. The plaintiff's contention as to the cause of the accident, which there was evidence to support, was that the defendant suddenly seized the steering wheel of the automobile, thereby causing it to leave the road and to collide with the obstruction. This was the alleged negligent act of the defendant on which the plaintiff's claim for recovery was based, and the case was clearly for the jury upon that question. In reply to this claim, the defense rested its case principally upon the contention that the decedent was guilty of contributory negligence, because, when the wheel was seized by the defendant, the decedent himself was driving at the excessive and negligent speed

of 70 miles an hour. The speed of the automobile thus became the controlling issue of fact in the case. This was the second trial of the case, and, although, with the exception of the testimony of the so-called expert referred to above, substantially the same evidence was presented at the first trial as at the second, the first trial resulted in a verdict for the plaintiff of $10,800, and the second in a verdict for the defendant. It would, therefore, seem that the testimony of this "expert" may well have been the controlling factor that produced a result so radically different in the second from that of the first trial, and we cannot believe that the admission of the testimony of the "expert" had little, if any, effect on the latter verdict.

The second reason for granting a new trial, namely, the method pursued by counsel for the defendant in defending the case, was not the chief ground upon which we acted. It had great weight, however, in shaking our confidence in the verdict, and forcing us to the conclusion that a proper administration of justice required a retrial of the case. Counsel for the defendant was, of course, the attorney for the defendant's insurance company, which, under its contract of insurance, was given the right to conduct the trial on behalf of the defendant. The insurance company had secured from the defendant, shortly after the accident, a statement in which he admitted having seized the steering wheel and caused the automobile to run off the road. At the first trial, counsel placed the defendant upon the witness stand and grounded his primary defense upon the contention that the defendant's act in seizing the wheel was impulsive, produced by a sudden emergency, and was not, therefore, negligent. The verdict having been in favor of the plaintiff on that issue, counsel for the defendant did not call his client at the second trial, but set up as a defense a supposed wrongful collusion between the plaintiff and the defendant to bring about a verdict in favor of the plaintiff, at the expense of the insurance company. Of course, if there was

such collusion, it would have justified the insurance company in repudiating liability under its policy and withdrawing from the case. It did not, however, in our judgment, warrant the company, which furnished the attorney to the defendant under its contract of insurance, in injecting its dispute with the insured upon this subject into the present trial of the case between the plaintiff and the defendant. The defendant was not called by his counsel and hence his evidence was not subject to attack; yet counsel attempted to introduce the insurance company's dispute with him into the case in the following manner:

"Mr. Herman: I offer to prove by this witness that he is the claims manager of the Zurich General Accident and Liability Company; that that company insured Mr. Bayuk, the defendant, against liability for damages imposed by law upon Mr. Bayuk, without mentioning any limits.

"Mr. Bernstein: And I object to this testimony unless a basis is laid for it. If the purpose is to show any collusion between the plaintiff and the defendant, the defendant himself, who has been in court throughout the progress of the case, ought to be called.

"The Court: It would be a sufficient reason, it seems to me, to explain the defendant's failure to call the nominal defendant as a witness. We will overrule the objection."

It may be noted here that the defendant Bayuk was not, as the learned judge characterizes him, a "nominal" defendant in the case; he was a real defendant with a real interest, and would have had to pay any verdict rendered against him in excess of the limits of liability under his insurance policy.

"Mr. Herman: And I may add that that (it) is not my intention to call the defendant as a witness, for the reason that I shall argue to the jury that there is collusion. . . ."

After this colloquy much testimony was presented upon the subject of collusion, and that part of the notes of the previous trial which contained the evidence the defendant then gave was offered and read to the jury. Reading all the evidence in the case upon this subject, we fail to find the slightest justification therein for the contention of the defendant's attorney that there was collusion between his client and the plaintiff, unless the defendant's version of the part he played in the accident, which he appears to have consistently told from its very happening, is in itself to be held proof of collusion between them. This cannot be so, for, if it were, truthfulness would be evidence of wrongful doing, and insurance contracts would become powerful inducements to perjury.

Had the insurance company's attorney withdrawn from the case and, in resisting a suit upon the policy after a verdict for the plaintiff, produced the same evidence that was presented by him in this trial, a verdict for the insurance company could not have been sustained. Nevertheless, its counsel, having lugged into the case by the ears this irrelevant issue, proceeded to denounce his client to the jury as a "crook", a "defrauder" and a "conspirator", and to charge that he was wickedly attempting, in collusion with the plaintiff, to bring about a verdict against himself. Such public repudiation of his client by an attorney is patently unwarranted both in law and in professional ethics, and is a peculiarly dangerous species of betrayal of one who is helpless to protect himself. Of course, we freely acquit counsel, for whom we entertain the highest regard, of any intentional professional misconduct. We do not think for a moment that he realized the significance and implication of his conduct, which he doubtless believed was in the interest of one of his clients. The embarrassing position of a double representation, however, cannot legally justify action on his part with repect to one which is to the detriment of the other. His obligation was to both, and he

should not have injected into the case an issue in which he could not serve each with equal fidelity. While this particular client may have benefited by the scathing denunciation to which his attorney subjected him, if such a practice were tolerated, a resentful jury, by rendering a verdict for the plaintiff far beyond the limits of the policy of insurance, might subject the client to substantial monetary loss. The contract of insurance which gives an insurance company the right to manage the defense of a case which it insures, and to furnish an attorney to the defendant for that purpose, gives it no right to commission the attorney openly and publicly to berate his client and repudiate him before the jury. The insurance company can always protect itself adequately by withdrawing from the case on the discovery of such a fraud. But if, as seems to have been the fact here, the imaginary fraud is unsupported by evidence, the company cannot remain in the case, and seek to advantage itself by diverting or beclouding the true issue to be tried. A defendant thus attacked and thus denounced is helpless, and without any representation or protection whatever. We think that such conduct on the part of an attorney should always be promptly stopped by the trial judge.

To this point we have considered only the injustice to the defendant of the conduct of the defendant's attorney. We think, however, that the action of the defendant's attorney was equally reprehensible and equally wrongful to the plaintiff, who was even more helpless than the defendant to meet such an attack. In order to meet this charge of collusion the plaintiff had forced upon him the election of taking the risk of calling a presumptively hostile adversary, or of resting his case upon a dispute between the defendant and his insurance company, in which the plaintiff had no interest, and against which he could not adequately prepare himself. In such a quarrel the plaintiff's case against the defendant was

bound to be forgotten or ignored by the jury. In these circumstances, it is not surprising that the verdict was a complete reversal of the result of the first trial, where the case was tried upon the true issue, divorced from the confusing effect of the false issue raised by the attorney for the defendant's insurance company.

As we have indicated above, our principal reason for granting a new trial is based upon the admission of the "expert" evidence already discussed. The conduct of the case by the defendant's attorney we considered as only incidental to the principal error of the trial.

One other matter requires comment, which counsel for the defendant has notified us he intends to argue on appeal. This relates to the fact that the oral argument for a new trial was heard by two judges in the absence of the trial judge. We refused the exceptions presented in that connection because they incorrectly recited, in substance, that the argument was had in the face of protests by counsel for the defendant, and against his demand that it be continued until the trial judge could appear. It has long been the custom of this court, when a case is tried by a judge from another district, specially presiding, to hear the arguments for a new trial and for judgment n. o. v. in the absence of the trial judge, whose presence entails additional expense to the Commonwealth and is often difficult to secure, except in special instances where the court deems the trial judge's presence necessary; and this custom has met with the apparent approval of the bar. When the case was called for argument, therefore, and counsel observed the absence of the trial judge, the court reminded him of the custom, and stated that the trial judge would, if necessary, be consulted by the court. This seemed to satisfy counsel, who did not press the matter, and proceeded with the argument without any further protest and in apparent acquiescence in the court's arrangements. In addition, it may be stated that before our decision was rendered, the trial judge was consulted by us, and dis-

cussed the issues with us. The two judges who heard the argument constituted a majority of the court, and their controlling joint conclusion was all that was legally required for a valid decision of the motion.

NOTE.—This opinion was affirmed by the Supreme Court on June 26, 1936.